IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| GRANT KELLING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION |
| v. | ) |
| | ) No. 16-1207-JWL |
| NANCY A. BERRYHILL,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Supplemental Security Income (SSI) benefits under sections 1602 and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 1381a and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1]On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSI benefits, ultimately alleging disability beginning April 3, 2013. (R. 12, 36-38). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. He argues that the ALJ erred in his residual functional capacity (RFC) assessment by improperly weighing the medical opinion of Dr. Buhr, his treating orthopedic surgeon, and by determining that Plaintiff's allegations of symptoms resulting from his impairments are not entirely credible.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. § 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. After evaluating step three, the Commissioner assesses claimant's RFC. 20 C.F.R. § 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court considers the errors alleged in the order presented in Plaintiff's Brief, and finds no error in the ALJ's decision.

## II.    Dr. Buhr's Opinion

Plaintiff claims error in the ALJ's determination to accord little weight to Dr. Buhr's June 23, 2014 opinion that Plaintiff must elevate his right foot above his heart periodically throughout the day to help with his edema. (Pl. Br. 11). He argues that the reasons given by the ALJ to discount this opinion "do not constitute good reasons." Id. Plaintiff acknowledges that this court has affirmed an ALJ's decision in circumstances somewhat similar to those present here, but argues that case should be distinguished from this case. Id. at 12 (citing Musick v. Astrue, Civ. A. No. 12-2006-JWL, 2013 WL 441064 (D. Kan. Feb. 5, 2013)). He acknowledges that in Musick, as here, the physician did not specify the frequency with which the claimant should elevate his leg, but argues that in Musick the physician suggested that the swelling could be controlled with compression stockings whereas Dr. Buhr provided no alternative which might control the swelling in Plaintiff's leg other than elevating it above his heart. (Pl. Br. 12-13). The Commissioner argues that the ALJ applied the correct legal standard in weighing the medical opinion of

4

Dr. Buhr, and provided two reasons to discount this opinion both of which are supported by the record evidence–that Dr. Buhr did not define "periodically," and that the opinion is not supported by the medical evidence. (Comm'r Br. 9-10). In his Reply Brief, Plaintiff argues that the evidence relied upon by the Commissioner to support the ALJ's reasons to discount Dr. Buhr's opinion is not inconsistent with the need to elevate Plaintiff's right leg and even though "the frequency [for elevating Plaintiff's leg] is not exact, the sole issue before the Court [sic] is whether the ALJ was correct that [Mr.] Kelling did [not] need to elevate his leg <u>at all</u>. To this question, Dr. Buhr's opinion is clear that he does." (Reply 2) (emphasis in Plaintiff's Reply).

A treating physician's opinion about the nature and severity of a claimant's impairments should be given controlling weight by the Commissioner if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. <u>Watkins v. Barnhart</u>, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. § 416.927(c)(2). When a treating physician's opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned it. <u>Robinson v. Barnhart</u>, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." <u>Watkins</u>, 350 F.3d at 1300. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or

testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. § 416.927(c)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).  However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).

After considering the above factors, the ALJ must give good reasons in his decision for the weight he assigns the opinion.  If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so.  Watkins, 350 F.3d at 1301.

Here, the ALJ stated that he had considered the opinion evidence in accordance with 20 C.F.R. § 416.927 and Social Security Rulings (SSR) 96-02p, 96-05p, 96-06p and 06-03p (R. 17) and he weighed and assigned weight to nine particular medical opinions, including three opinions provided by Dr. Buhr.  (R. 21-24).  With regard to the ALJ's treatment of eight of those opinions Plaintiff does not object, but he asserts the errors discussed above in the ALJ's evaluation of Dr. Buhr's June 23, 2014 opinion that Plaintiff "should elevate his right foot above his heart periodically throughout the day to help with

6

his edema." (R. 22) (citing Ex. 24F/3 (R. 514)). The court accepts the other opinions as evaluated by the ALJ.

As to Dr. Buhr's June 23, 2014 opinion, the ALJ gave it little weight because it is vague due to the word "periodically" being undefined, and because "it does not appear to be supported by the medical evidence." (R. 22). The court finds no error in either of the reasons given by the ALJ.

First, the failure to define "periodically" is a valid basis to discount the opinion. This is so because the Social Security Regulations recognize that each workday includes a lunch break and two other breaks spaced at approximate two-hour intervals through the work day. Thus, if the need to elevate Plaintiff's leg can be accommodated within that schedule, it will have no effect on the wide range of work at all occupational levels. Dr. Buhr's opinion says nothing regarding this possibility.

Second, and perhaps most importantly, Dr. Buhr's opinion is not supported by the medical evidence. The court notes that it would have been better if the ALJ had been more specific regarding the lack of support for Dr. Buhr's opinion. However, a reviewer such as this court is able to ascertain what is lacking by reviewing the record medical evidence in light of Dr. Buhr's opinion. Dr. Buhr was of the opinion that Plaintiff must raise his right foot above his heart "to help with his edema." (R. 514). The court's review of the totality of Dr. Buhr's treatment records and the treatment records of Via Christi Clinic, and all of the records cited by Plaintiff or by the Commissioner in this regard reveals no reference to edema in Plaintiff's right foot or right leg, except for Dr.

7

Buhr's opinion. Clearly the medical evidence does not support this opinion–as the ALJ found. This is sufficient reason to discount the opinion.

## III.     The Credibility Determination

Although Plaintiff did not specifically argue that the ALJ's credibility determination is erroneous, in supporting his argument that the ALJ erred in weighing Dr. Buhr's medical opinion he argued that "[t]he ALJ was incorrect to discredit [Mr.] Kelling['s] testimony that he needed to elevate his leg." (Pl. Br. 13). He argued that the ALJ mischaracterized the evidence regarding Plaintiff's activities, id., and that Plaintiff's attendance at Kansas State University, his attempts at finding work, and his trips to the lake with a friend, support rather than detract from his credibility. Id. at 14-15. Finally, he argues that his "ability to bathe, shave, dress, and feed himself is not substantial evidence that he could perform work activities for eight hours a day." Id. at 15.

The Commissioner recognized this argument as an argument that the ALJ's credibility determination was erroneous, and responded to it accordingly. (Comm'r Br. 11-15). She argued that the ALJ reasonably considered Plaintiff's allegations of symptoms in accordance with the applicable law and regulations and stated his reasons to discount those allegations, and she argued that those reasons are supported by the record evidence. (Comm'r Br. 12-14). Finally, she argued that the ALJ did not use Plaintiff's ability to bathe, shave, dress, and feed himself to show that Plaintiff could perform work activities for eight-hours a day. but to show that the activities cited are inconsistent with Plaintiff's testimony regarding his disabling limitations, and that even if the court finds

error in some of the ALJ's reasons, it should not find error in the credibility determination because such "determinations are peculiarly the province of the finder of fact and [a court] will not upset such determinations when supported by substantial evidence." Id. at 14-15 (quoting Hackett, 395 F.3d at 1173) (brackets added).

### A. Standard for Determining Credibility

The Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating credibility, the court has recognized a non-exhaustive list of factors which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R. § 416.929(c)(3). These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and

9

> relationship between the claimant and other witnesses, and the consistency
> or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating credibility which overlap and expand upon the factors stated by the court: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. § 416.929(c)(3)(i-vii).

The court's review of an ALJ's credibility determination is deferential. It is generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173. Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson, 987 F.2d at 1490 ("deference is not an absolute rule"). "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the

10

guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

## B. The ALJ's Credibility Determination

The ALJ summarized Plaintiff's allegations of limitations resulting from his impairments, and concluded that those allegations "are not entirely credible for the reasons explained in this decision." (R. 17). Later in the decision, the ALJ summarized the legal standard for evaluating credibility and stated his findings in that regard:

> Because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 416.929(c) and Social Security Ruling 96-7p describe the kinds of evidence, including the factors below, that the undersigned must consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements: 1) the claimant's activities of daily living, 2) the location, duration, frequency, and intensity of pain or other symptoms, 3) precipitating and aggravating factors, 4) the type, dosage, effectiveness, and side effects of medications taken to alleviate pain or other symptoms, 5) treatment, other than medication, for relief of pain or other symptoms, 6) any measures other than medication used to relieve pain or other symptoms, and 7) any other factors concerning functional limitations and restrictions due to pain or other symptoms produced by medically determinable impairments.
>
> The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. He had a medical appointment at Via Christi Clinic on June 12, 2012, when Jill Baker, ARNP, indicated that he was doing okay and he had resumed his normal activities (Exhibit 6F/2). He told Ms. Baker that he was going to Kansas State University in the fall to major in food science. He had full weight bearing and was not using a cane or a crutch. He saw Dr. Davis on May 31, 2013, when he admitted to going out more in the evenings with his friends, along with being more active around his house by doing things like cooking meals (Exhibit 17F /7). He treated with Dr. Davis on August 1, 2013, when he told the doctor that he was looking for a place where he could get certified as a locksmith (Exhibit 17F/3). Moreover, he

11

> was thinking about returning to college. He saw Dr. Davis on July 24, 2014, where he told the doctor that he was going to the lake on a fairly regular basis (Exhibit 26F/2). He stated in his function report that he had no trouble with bathing, shaving, feeding himself, or using the toilet (Exhibit 9E/2). Overall, the claimant's daily activities are not consistent with someone who is disabled, but is not dispositive by itself.
>
> The allegations of pain at hearing are in contrast to what he has been telling his treating sources. Other than the initial surgeries required to deal with acute injuries, treatment has been relatively conservative.

(R. 21).

### C. Analysis

Plaintiff does not argue that the findings of the ALJ are factually incorrect, factually erroneous, or are not supported by the record evidence. Rather, he argues that the evidence does not stand for the propositions on which the ALJ relied. He argues that despite reporting to Ms. Baker that he was doing OK and had "pretty much resumed his normal activities," he did not resume all of his normal activities, he was wearing an ankle orthotic most of the time, he reported worsening pain with activity, he had an abnormal gait, his left leg was shorter, and he had weakness in his right foot and ankle. (Pl. Br.13) (quoting R. 373). None of this shows error in the ALJ's decision because the mere inability to return to what was "normal" before the event which produced an impairment is not a sufficient condition to establish disability, and significant gainful activity does not require the ability to work pain-free or without worsening pain throughout a workday. What is required for disability is functional limitations which preclude any substantial gainful activity. Plaintiff argues that the evidence relied upon by the ALJ "does not

12

demonstrate that he could work." (Pl. Br. 14). Plaintiff's argument turns the burden of proof in a Social Security case on its head. It is not the ALJ's or the Commissioner's burden to prove that the claimant is able to work, rather it is the claimant's burden to prove that he has functional limitations which result in an RFC that precludes any substantial gainful activity. While Plaintiff has no past relevant work, and therefore does not need to prove that he cannot do his past relevant work, the fact that the burden shifts to the Commissioner at step five does not require the Commissioner to prove that Plaintiff can work vel non, rather, it is Plaintiff's burden to prove his functional limitations, and then it becomes the Commissioner's burden at step five to prove that there exists work in the economy which can be performed by an individual with the functional limitations proven by Plaintiff.

Plaintiff's argument that his attendance at Kansas State University supports his credibility because he essentially flunked out and moved back home misses the point of the ALJ's discussion. The ALJ's point was that Plaintiff's enrollment and attendance at college suggest that he believed he was able to carry on substantial gainful activity, thereby rendering his contrary assertion of symptoms which prevent substantial gainful activity less than credible. Moreover, as the ALJ also noted, Plaintiff later stated that he was looking for a place to get certified as a locksmith and thinking of returning to college, further suggesting his belief that he could engage in substantial gainful activity. (R. 21) (citing Ex. 17F/3 (R. 458)). The fact that Plaintiff essentially flunked out of college does

not change the weight of the ALJ's inference because hundreds, perhaps thousands, of young people who are admittedly not disabled flunk out of colleges each year.

Plaintiff argues that his desire to get certified as a locksmith should bolster his credibility because it demonstrates his motivation to work, and his going to the lake should not be used against him because it was in response to his doctor's orders "to get out of the house to combat his depression." (Pl. Br. 15). While Plaintiff's desire to be a locksmith may demonstrate motivation to work it also supports the ALJ's inference that Plaintiff believed he was able to work, contrary to Plaintiff's assertions to the agency. Moreover, his going to the lake on a regular basis suggests he is able to do more than he asserted to the agency. And, the fact his doctor ordered it, suggests that the doctor believed he was able to do more than he was doing.

The question for the court is whether the ALJ's decision is supported by the record evidence. It is not enough to show record evidence which could plausibly support a decision different than the ALJ's. Plaintiff must demonstrate the error in the ALJ's rationale or findings; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v.

Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (same).  Giving the ALJ's credibility finding due deference, the court finds no error.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 16th day of May 2017, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**